IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Luquines Lizell Cromedy, | ) | Civil Action No. 8:12-cv-02522-DCN-JDA |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Carolyn W. Colvin,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local

Rule 73.02(B)(2)(a), D.S.C., and Title 28, United States Code, Section 636(b)(1)(B).[2]

Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain

judicial review of a final decision of the Commissioner of Social Security ("the

Commissioner"), denying Plaintiff's claim for disability insurance benefits ("DIB") and

supplemental security income ("SSI"). For the reasons set forth below, it is recommended

that the decision of the Commissioner be affirmed.

**PROCEDURAL HISTORY**

Plaintiff filed a claim for DIB and SSI on May 14, 2009, alleging disability as of

October 1, 2008 [R. 148-153, 144-147], due to multiple sclerosis, high cholesterol, and

tingling pain in her lower extremities [R. 54]. The claims were initially denied on August 20,

---

[1]Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

2009 [R. 52-53], and were denied on reconsideration by the Social Security Administration ("the Administration") on May 18, 2010 [R. 58-59]. A timely request for hearing was made, and on December 13, 2010, Administrative Law Judge ("ALJ") Augustus C. Marti, held a hearing on Plaintiff's claim. [R. 22-51.] On December 30, 2010, the ALJ issued his decision that Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act ("the Act"). [R. 5-21.]

At Step 1,[3] the ALJ found Plaintiff met the insured status requirements of the Act through March 31, 2011, and had not engaged in substantial gainful activity since October 1, 2008, her alleged onset date. [R. 10, Findings 1 & 2.] At Step 2, the ALJ found Plaintiff had severe impairments of multiple sclerosis and obesity. [R. 10, Finding 3.] The ALJ also found that Plaintiff had a non-severe impairment of mixed hyperlipidemia, and a non-determinable medical impairment related to depressive symptoms (which was reported prior to the hearing but not found to be established by objective evidence of record). [R. 11.] At Step 3, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 11, Finding 4.] The ALJ considered Listing 11.09 with respect to Plaintiff's multiple sclerosis [R. 11], and considered SSR 02-01p with respect to Plaintiff's obesity during the RFC analysis [R. 13].

Before addressing Step 4, Plaintiff's ability to perform her past relevant work, the ALJ found Plaintiff retained the following residual functional capacity ("RFC"):

---

[3]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

> claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, the claimant can lift and carry up to 20 pounds occasionally and 10 pounds frequently and sit for 6 hours in an 8-hour work day.  However, the claimant can stand and walk two hours a day, never climb ladders, ropes, or scaffolds, occasionally climb ramps and stairs, occasionally balance, and she must avoid all exposure to hazards.

[R. 11, Finding 5.]   Based on this RFC, at Step 4, the ALJ determined Plaintiff was unable to perform her past relevant work [R. 16, Finding 6]; however, considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform [R. 16, Finding 10]. Consequently, the ALJ concluded Plaintiff had not been under a disability, as defined by the Act, from October I, 2008, her alleged onset date, through the date of the ALJ's decision.  [R. 17, Finding 11.]

Plaintiff subsequently requested Appeals Council review of the ALJ's decision [R. 4] and, on June 29, 2012. , the Appeals Council  declined review [R. 1–3].   Plaintiff filed this action for judicial review on August 31, 2012.   [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is replete with error.   [Doc. 16 at 8.] Specifically, Plaintiff argues

1.    the ALJ "identified the proper Listing of 11.09 for Multiple Sclerosis, [but] did not, in any shape or form, compare the requirements of the listing to [Plaintiff's] symptoms despite credible evidence of those very symptoms" [Doc. 17 at 10–11];

2.    in evaluating Plaintiff's credibility, the ALJ (a) failed to consider the entire record; (b) failed to "articulate his findings in a manner that permits the court

3

to determine whether substantial evidence supports his decision"; and (c) failed to discuss Plaintiff's financial issues with respect to his reference to her non-compliance with medical treatment, [*id.* at 12-14];

3.      the ALJ improperly weighed the opinion evidence of Plaintiff's treating Neurologist, Dr. Maru, who opined that Plaintiff was unable to work due to her condition [*id.* at 14-16];

4.      the ALJ's RFC analysis is flawed because he "could not have considered the combined effects of all of her impairments and all relevant evidence" after improperly discrediting her testimony about the effects of her impairments and improperly evaluating medical opinion evidence, [*id.* at 16]; and,

5.      the ALJ was not entitled to rely on the testimony of the vocational expert because his testimony was based on a flawed and incomplete hypothetical that did not fairly set out of all of Plaintiff's impairments [*id.* at 17].

The Commissioner, on the other hand, contends the ALJ's decision is supported by proper and substantial evidence because

1.      the ALJ properly determined at Step Three that Plaintiff did not meet Listing 11.09 and his discussion of the same tracked the requirements of each paragraph (A, B, and C) of Listing 11.09 [Doc. 20 at 14-15];

2.      the ALJ properly evaluated Plaintiff's credibility, acknowledged that Plaintiff had underlying impairments that could produce her reported symptoms, but found, in view of the record as a whole, that those symptoms were not as debilitating as she claimed  [*id.* at 15-21];

4

3.    the ALJ properly weighed the opinion evidence of record and properly discounted Dr. Maru's opinion as it was  not supported by his own clinical findings [*id.* at 21-23];

4.    the ALJ properly assessed Plaintiff's RFC, including only those limitations credibly supported by the record [*id.* at 24]; and,

5.    the ALJ's hypothetical accurately reflected all of the limitations for which he found substantial support in the record and, thus, he properly relied on the testimony of the vocational exert based on that same hypothetical  [*see*, *id.* at 25].

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

5

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and

when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the Commissioner to explain the basis for the decision. *See Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court

enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[4] With remand under sentence

---

[4] Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence. *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992). Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

8

six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents

9

the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.  20 C.F.R. §§ 404.1520, 416.920. Through the fourth step, the burden of production and proof is on the claimant.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).  The claimant must prove disability on or before the last day of her insured status to receive disability benefits.  *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).  If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience.  *Grant*, 699 F.2d at 191.  If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary.  20 C.F.R. §§ 404.1520(a), 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. §§ 404.1572(a), 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* §§ 404.1572(b), 416.972(b).  If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity.  *Id.* §§ 404.1574–.1575, 416.974–.975.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.  *See id.* §§ 404.1521, 416.921.  When determining whether a

10

claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

### C.  *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. §§ 404.1509 or 416.909, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.[5]  20 C.F.R. §§ 404.1520(d), 416.920(a)(4)(iii), (d).

---

[5]The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911, 416.925.

### D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[6] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. §§ 404.1560(b), 416.960(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See* 20 C.F.R. §§ 404.1520(f)–(g), 416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).  To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[7]  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving

---

[6]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

[7]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. §§ 404.1569a(a), 416.969a(a).  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id*.  Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  20 C.F.R. §§ 404.1569a(c)(1), 416.969a(c)(1).

exertional limitations). When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines. *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work. 20 C.F.R. §§ 404.1569a, 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy."). The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker*, 889 F.2d at 50. For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in

ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. §§ 404.1527(c), 416.927(c).  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. §§ 404.1527(d), 416.927(d). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. §§ 404.1517, 416.917; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. §§ 404.1517, 416.917. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

15

V.    **Pain**

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'"  *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain."  *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs."  *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. §§ 404.1528, 416.928.  Indeed, the Fourth

16

Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the

adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. §§ 404.1529(c)(1)–(c)(2), 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record.  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).  Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria.  *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

<u>**APPLICATION AND ANALYSIS**</u>

**Listing Analysis**

To determine whether a claimant's impairments meet or equal a listed impairment, the ALJ identifies the relevant listed impairments and compares the listing criteria with the evidence of the claimant's symptoms.  *See Cook*, 783 F.2d at 1173 (stating that without identifying the relevant listings and comparing the claimant's symptoms to the listing

criteria, "it is simply impossible to tell whether there was substantial evidence to support the determination").  "In cases where there is 'ample factual support in the record' for a particular listing, the ALJ must provide a full analysis to determine whether the claimant's impairment meets or equals the listing." *Beckman v. Apfel*,  No. WMN-99-3696, 2000 WL 1916316, at *9 (D. Md. Dec. 15, 2000) (unpublished opinion) (quoting *Cook*, 783 F.2d at 1172).  While the ALJ may rely on the opinion of a State agency medical consultant in conducting a listing analysis, 20 C.F.R. § 404.1527(f)(2)(iii), the ALJ ultimately bears the responsibility for deciding whether a claimant's impairments meet or equal a listing, *id.* § 404.1527(e)(2).

### Criteria of Relevant Listing

In this case, the ALJ determined the relevant listing was 11.09, *Multiple Sclerosis*. Listing 11.09 reads as follows:

*Multiple Sclerosis with*:

A.     Disorganization of motor function as described in 11.04B[8]; or

---

[8]Listing 11.04B provides as follows:  *Central nervous system vascular accident.* With one of the following more than 3 months post-vascular accident:

   B.     Significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C).

19

B.     Visual or mental impairment as described under the criteria in 2.02[9], 2.03[10], 2.04[11], or 12.02[12]; or

---

[9]Listing 2.02 provides as follows:  *Loss of Visual Acuity*.  Remaining vision in the better eye after best correction is 20/200 or less.

[10]Listing 2.03 provides as follows: *Contraction of the visual field in the better eye, with*:

    A.     The widest diameter subtending an angle around the point of fixation no greater than 20 degrees; or,

    B.     An MD of 22 decibels or greater, determined by automated static threshold perimetry that measures the central 30 degrees of the visual field (see 2.00A6d), or,

    C.     A visual field efficiency of 20 percent or less, determined by kinetic perimetry  (see 2.00A7c).

[11]Listing 2.04 provides as follows: *Loss of visual efficiency, or visual impairment, in the better eye:*

    A.     A visual efficiency percentage of 20 or less after best correction (see 2.00A7d); or,

    B.     A visual impairment value of 1.00 or greater after best correction (see 2.00A8d).

[12]Listing 12.02 provides as follows:  *Organic mental disorders*: Psychological or behavioral abnormalities associated with a dysfunction of the brain. History and physical examination or laboratory tests demonstrate the presence of a specific organic factor judged to be etiologically related to the abnormal mental state and loss of previously acquired functional abilities.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

    A.     Demonstration of a loss of specific cognitive abilities or affective changes and the medically documented persistence of at least one of the following: (1)disorientation to time and place; (2) memory impairment, either short-term (inability to learn new information), intermediate, or long-term (inability to remember information that was known sometime in the past); (3) perceptual or thinking disturbances (e.g., hallucinations, delusions);   (4) change in personality; (5) Disturbance in mood; (6) emotional liability (e.g., explosive temper outbursts, sudden crying, etc.) and impairment in impulse control; (7) Loss of measured intellectual ability of at least 15 I.Q. points from pre-morbid levels or overall impairment index clearly within the severely impaired range on neuropsychological testing, e.g., Luria-Nebraska, Halstead-Reitan, etc;

AND

    B.     Resulting in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration;

OR

    C.     Medically documented history of a chronic organic mental disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one

C.      Significant, reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated on physical examination, resulting from neurological dysfunction in areas of the central nervous system known to be pathologically involved by the multiple sclerosis process.

**The ALJ's Listing Analysis**

The ALJ, in analyzing Plaintiff's ability to meet or medically equal Listing 11.09, made the following finding:

the claimant's condition does not result in disorganization of motor function, a visual/mental impairment, or significant, reproducible fatigue, or motor function with substantial muscle weakness on repetitive activity demonstrated on physical examination.

[R. 11.]

**Discussion**

The regulations provide that the burden of establishing disability under the Listings is on the claimant.  *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(c); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir.1981).  Plaintiff argues that the "entire record, subjective and objective" supports a finding that Plaintiff meets Listing 11.09.  [Doc. 17 at 11.]  While Plaintiff has clearly been diagnosed with multiple sclerosis, as discussed below, Plaintiff fails to point the Court to any evidence of record which supports a finding of the remaining elements of the Listing, or which contradicts the ALJ's determination.

---

of the following: (1) repeated episodes of decompensation, each of extended duration; (2) a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

### *ALJ's Consideration of Listing Elements*

### *1.    Disorganization of motor function*

Disorganization of motor function is defined in Listing 11.09 by reference to Listing 11.04B and Listing 11.00C. Listing 11.04B requires "significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station." Listing 11.04B is further defined by Listing 11.00(C) which requires a finding of

> Persistent disorganization of motor function in the form of paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances (any or all of which may be due to cerebral cerebellar, brain stem, spinal cord, or peripheral nerve dysfunction) which occur singly or in various combination, frequently provides the sole or partial basis for decision in cases of neurological impairment. The assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands, and arms.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.00(C).

With respect to evidence supporting the "disorganization of motor function", Plaintiff argues that she "needed help with laundry, transportation, and bathing herself (TR 5-6); she struggled to balance, she frequently experienced numbness and tingling in the right side of her body, she felt pain in the left side of her body and pressure in her lower back (TR 32)". [Doc. 17 at 11.] Plaintiff also contends her testimony is corroborated by her sister's testimony that "she noticed [Plaintiff's] inability to walk normally, her loss of balance, slurred speech, inability to climb stairs, vision problems, and decreased grip strength (TR 42-43)". [*Id*.]

The ALJ, in considering Plaintiff's issues with motor function, noted the following:

\*    The claimant reported continued right sided tingling and balance difficulties. (Exhibit 5F). Yet, physical and neurological examinations were generally normal, including gait, station, and running.  [R. 12.]

\*    Despite the lack of medication, physical examination revealed only mild decreased strength in the left upper extremity and decreased sensation in the right hemicorpus. Otherwise, the physical and neurological exams were normal.  [R. 13.]

\*    In August 2010, although the claimant presented with subjective right hemiparesis, but this was not found on formal neurological examination.  In fact, the record indicates that the claimant's presentation was likely due to an aggravation of a previous urinary tract infection. (Exhibit 10F).  Additionally, the examination noted that the claimant had only a "very subtle" decrease in her right upper and lower extremity strength, and sensation was only "slightly decreased" in the right hemicorpus to pinprick. (Exhibit 10F). Otherwise, the physical examination was normal.  [*Id.*]

\*    Upon consultative examination, in May 2010, the evidence indicates that the claimant's physical examination was generally normal. Specifically, the examiner noted that he claimant was in no acute distress, and had normal range of motion in all extremities and spine. Notably, while the examiner reported that the claimant exhibited an unsteady gait, examination revealed normal tone, bulk, and strength, and the neurological examination was also within normal limits. (Exhibit 7F).  [*Id.*]

\*    In comparing the claimant's testimony to the other evidence of record, the claimant seemed to exaggerate some symptoms.  For example, the claimant reported vision and speech difficulties since her onset of multiple sclerosis.  However, these allegations are not supported by the evidence of record.  Specifically, the consultative examiner noted that the claimant's vision was within normal limits. (Exhibit 7F). Additionally, the claimant's speech was not noted to noticeably impair communication with examiners or providers. Furthermore, in April 2010, following an acute exacerbation, physical therapy  notes reported that the claimant's word, phrase, sentence, and conversational speech were judged as 100% intelligible.  The speech were judged as 100% intelligible. The therapist concluded that the claimant's cognition, language, and swallowing were all within functional limits. (Exhibit 10F).  [R. 14.]

       \*    The claimant also testified to an ongoing general weakness on the right side of her body, such that

23

> she was unable to lift a gallon of milk, or perform household chores. Yet, treatment notes reflect that even before the claimant became compliant with her medication, she ad only "residual mild right-sided weakness", and her decreased strength was "very subtle". (Exhibit 10F). [R. 14.]

The ALJ also noted that while Plaintiff testified that she spent the majority of her day sitting, she did not use assistive devices for ambulation and attended to her personal needs. Id. And, with respect to the testimony of Plaintiff's sister, the ALJ concluded that the level of severity described was inconsistent with the medical evidence of record. Id.

### 2.    *Visual/mental impairment*

Plaintiff argues that she has visual problems; however Plaintiff does not point the Court to evidence of record which substantiates a finding of visual problems consistent with the requirements of Listing 11.09. To the contrary, the ALJ noted evidence of recording finding that Plaintiff's "vision was within normal limits. (Exhibit 7F)." [R. 14.]

### 3.    *Significant, reproducible fatigue, or motor function*

Plaintiff testified that she was unable to walk normally, would lose her balance, and was unable to climb stairs. [R. 42-43.] Plaintiff also points to medical records showing that she was referred to a physical therapist for her decreased ambulation, endurances, and activity tolerance. [R. 371.] Plaintiff, however, fails to point to any evidence of record to show that her reproducible fatigue or motor function involved "substantial muscle weakness on repetitive activity demonstrated on physical examination" as required by the Listing. In contrast, the ALJ cites to treatment notes indicating that "[Plaintiff] had only 'residual mild right-sided weakness', and her decreased strength was 'very subtle.'" (Exhibit 10F)." [R. 14.]

24

**Analysis**

Upon consideration, the Court finds the ALJ adequately explained his reasoning for finding Plaintiff did not meet Listing 11.09. It is not enough that the claimant has the diagnosis of a listed impairment; Plaintiff must also evidence the requirements for the listing of that impairment. 20 C.F.R. § 404.1525(d); *see Bowen v. Yuckert*, 482 U.S. 137, 146 and n. 5 (1987) (noting the claimant has the burden of showing that his impairment is presumptively disabling at step three of the sequential evaluation and that the Act requires him to furnish medical evidence regarding his condition). Merely "coming close" to meeting a listing is not enough to establish equivalence, and Plaintiff cannot establish equivalence merely by showing that the overall functional impact of her combination of impairments was as severe as that of a listed (i.e. presumptively disabling) impairment. *See Sullivan v. Zebley*, 493 U.S. 521, 531(1990). Instead, the claimant must present medical findings equal in severity to every criterion in a listing. *See id.*

While Plaintiff has clearly been diagnosed with multiple sclerosis, the Plaintiff has failed to show that she can meet the requirements of Listing 11.09. Accordingly, the Court finds the ALJ's listing analysis is supported by substantial evidence.

**Credibility Determination**

Next, Plaintiff argues the ALJ's credibility analysis "failed to comply with SSR 97-6p and *Craig* in evaluating [Plaintiff's] credibility." [Doc. 17 at 12.] Specifically, Plaintiff contends the ALJ "relied on excerpts that favored his conclusion;" "rejected only the portion of a consultative exam in May of 2010 that stated [Plaintiff] had an 'unsteady gait';" rejected "Dr. Maru's letter to the medical assistance program that stated she was unable to work

25

due to her condition;" improperly discredited Plaintiff's complaints of slurred speech; failed to mention "the multiple occasions upon which [Plaintiff's] subjective complaints of tingling, numbness, and decreased grip strength were deemed consistent with her MS by several MRIs;" failed to address her sister's testimony; and he "did not address the RFC examiner's statement that, her complaints of tingling and pain in her lower extremities, and inability to stand very long were credible."   [*Id*.  at 12-13.]

In evaluating subjective complaints, the United States Court of Appeals for the Fourth Circuit has stated that "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig*, 76 F.3d at 594. The first step requires there to "be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotation omitted).  During the second step, the ALJ must expressly consider "the intensity and persistence of the claimant's pain [or other symptoms] and the extent to which it affects [his] ability to work."  *Id.* In making these determinations, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p. "[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded solely because they are not substantiated by objective medical evidence." *Id.*

"This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and

the extent to which it impairs [his] ability to work." *Craig*, 76 F.3d at 595.  A claimant's subjective complaints "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges she suffers." *Id.*  The social security regulations inform claimants that in evaluating subjective complaints, the Commissioner will consider the following relevant factors:

(i)     Your daily activities;

(ii)    The location, duration, frequency, and intensity of your pain or other symptoms;

(iii)   Precipitating and aggravating factors;

(iv)    The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

(v)     Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi)    Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii)    Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

### *Plaintiff's Testimony / Activities of Daily Living*

Plaintiff has a history of relapsing-remitting multiple sclerosis. [R. 379.]  She was diagnosed in May 2009 and experienced an exacerbation of multiple sclerosis in April 2010 which required hospitalization. [*Id*.]  Plaintiff claims that her multiple sclerosis and high

27

cholesterol limit her ability to work.  [R. 172.]  Plaintiff last worked as a cashier, but she stopped working in February 2008 because she was not getting enough hours. [*Id.*]

During her hearing before the ALJ, Plaintiff testified that she does not use a cane, walker, brace or any assistive device for moving about, but that she normally uses the walker to stable herself.  [R. 30.]  In response to the ALJ's question about physical problems resulting from multiple sclerosis, Plaintiff testified that she wears glasses because it's normally hard for her to see out of her left eye and that her speech is really slurred–like a stroke patient. [R. 31-32.] Plaintiff also testified that her "balance is off," she has "tingling on the right side of [her] body" which is "very numb most of the time," and her "nerve is damaged." [R. 32.]  In response to questions from the ALJ about pain, Plaintiff indicated that, when she had pain in the left-lower part of her back, she could not feel her feet for very long; consequently, she testified she cannot stand for very long. [*Id.*] Plaintiff testified her pain was a 10 on a scale of 1-10. [*Id.*] Plaintiff also testified to having trouble lifting and gripping. [*Id.*]

Plaintiff testified that she takes the following medications: Neutrontin, Betaseron (an injection), Pravastatin (for cholesterol),  Ocybutynin (for bladder control) and Ibuprofen (for headaches), and that these medications leave her feeling fatigued most of the time.  [R. 35.]  Plaintiff testified that her Betaseron injection, which she takes every other night, leaves her with flu-like symptoms. [*Id*.]  Plaintiff testified that her condition has worsened over the last six months to a year because she "can't wear heels anymore" and "can't go out", leaving her feeling depressed.  [R. 36.]  Plaintiff testified that he has "emotion

28

problems because this is just like a lot on me.  It's like my life changed so dramatically."
[*Id.*]

When asked by the ALJ about her activities of daily living, Plaintiff testified that she normally tries to bathe herself but can't do much.  [R. 37.]  She testified that most of the food she eats is microwavable because she can't stand long enough to cook over the stove.  Id.  Plaintiff indicated that, after eating lunch, she normally lays on the couch and watches TV; she's not comfortable going outside because her balance is off and she has fallen several times.  Id.  Plaintiff testified that her sleep is often interrupted due to pain [*id.*]; that she leaves the cleaning, dusting, vacuuming, and dishes for her daughter [R. 38-39]; that she rides "in the little scooter thing" when she goes to the store [R. 39]; and that she reads books for entertainment [*id.*].  Plaintiff testified she has friends who visit her maybe once or twice a week [*id.*], and that she belongs to a church but has not attended services in quite some time [R. 40].  Plaintiff testified she can not pick up or carry anything because she has a weakness; but that she could pick up a gallon of milk if she was not really weak.  [*Id.*]

Plaintiff's sister testified that she provides transportation for Plaintiff because she does not have a car.  [R. 42.] The sister testified that Plaintiff's slurred speech and inability to balance and walk on her own is sort of frustrating at times.  [*Id.*]  She also testified that Plaintiff is not able to walk around at the mall, and that she needs assistance going up and down stairs.  [*Id.*]  Plaintiff's sister also indicated that she's had to take Plaintiff to the emergency room because of her pain and that Plaintiff experienced double vision, "or whatever the case may be," one day when driving herself to the hospital.  [R. 43.]

29

Plaintiff's sister also testified that she either brings Plaintiff meals that she prepares at home, or has her sister over to eat. [*Id*.] She also testified that she will help her sister clean if she is available.  [R. 44.]

### ALJ's Credibility Analysis

During step 1 of the credibility analysis, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. The ALJ, upon considering the medical evidence of record, noted  the following:

* The medical evidence of record indicates that the claimant's symptoms are generally controlled on medication. Specifically, the record reflects the claimant was admitted to the hospital in October 2008 for right sided tingling, headaches, and blurred vision. (Exhibit 3F). The claimant's symptoms significant [sic] improved with intravenous medication. She had complete resolution of her sixth cranial nerve palsy, but continued to have some right sided tingling.  However, it was improved with Neurontin. (Exhibit 2F). [R. 12.]

* In May 2009, she presented with a headache, left sided tingling, and shooting pain in her left lower extremity. Physical examination revealed hypoesthesia to pinprick sensation and only subtle weakness in the left arm and leg. A MRI brain scan found a new small enhancing lesion in the right pons. (Exhibit 2F). The claimant was treated with medication and at the time of discharge, her symptoms had almost resolved completely. It was noted the claimant was stable upon discharge. The claimant was diagnosed with multiple sclerosis. (Exhibit 2F).  [R. 12.]

* The claimant presented to the emergency room in August 2009 with complaints of a severe headache and right sided tingling. (Exhibit SF). In October 2009, the record indicates that while the claimant had been diagnosed with multiple sclerosis, she was not on disease modifying therapy. The claimant reported continued right sided tingling and balance difficulties. (Exhibit 5F). Yet, physical and neurological examinations were generally normal, including gait, station, and running. The claimant was prescribed immunomodulatory therapy. (Exhibit 5F).  [R. 12.]

* The record indicates that in February 2010, the claimant still had not started her prescribed medication to treat her multiple sclerosis. (Exhibit 5F). Despite the lack of medication, physical examination revealed only mild decreased strength in the left upper extremity and decreased sensation in the right

hemicorpus. Otherwise, the physical and neurological exams were normal. [R. 13.]

* In August 2010, although the claimant presented with subjective right hemiparesis, but this was not found on formal neurological examination. In fact, the record indicates that the claimant's presentation was likely due to an aggravation of a previous urinary tract infection. (Exhibit 10F). Additionally, the examination noted that the claimant had only a "very subtle" decrease in her right upper and lower extremity strength, and sensation was only "slightly decreased" in the right hemicorpus to pinprick. (Exhibit 10F). Otherwise, the physical examination was normal.  [R. 13.]

* Upon consultative examination, in May 2010, the evidence indicates that the claimant's physical examination was generally normal. Specifically, the examiner noted that the claimant was in no acute distress, and had normal range of motion in all extremities and spine. Notably, while the examiner reported that the claimant exhibited an unsteady gait, examination revealed normal tone, bulk, and strength, and the neurological examination was also within normal limits. (Exhibit 7F).  [R. 13.]

During his step 2 analysis, however, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not credible to the extent they are inconsistent with the determined RFC.  [R. 15.]  The ALJ reasoned as follows:

Consideration has been given to the opinion of John Gastright, M.D., the consultative examiner, wherein he reported that the claimant would have a difficult time in a position that required prolonged standing or stair climbing. (Exhibit 7F). As this opinion is supported by the examiner's physical examination and it is consistent with the other evidence of record, it is accorded considerable weight.

The undersigned has also considered the October 2010 opinion of Neal Maru, M.D., the claimant's treating resident physician, wherein Dr. Maru reported to an medication assistance program that the claimant was currently unable to work due to her condition. (Exhibit 10F).  However, the undersigned notes that such a determination regarding disability is an issue explicitly reserved to the Commissioner of the Social Security Administration. See 20 C.F.R. § 404.1527( e). Additionally, the record fails to reflect any specific functional limitations placed upon the claimant.  Furthermore, this opinion is inconsistent with the findings upon physical examination. Specifically, Dr. Maru's treatment notes reported in August 2010 that after

31

beginning her medication in April 2010, the claimant was doing well and reported her headaches had resolved and her left hand paraesthesias were improved. (Exhibit 10F). Therefore, this opinion is accorded little weight.

Great weight is given to the opinion of the May 2010 opinion of the state agency medical consultant wherein the claimant was limited to light work. Additionally, the consultant reported that the claimant was limited to two hours of standing/walking in an eight-hour day, occasional climbing of ramps and stairs, with occasional balancing, and no climbing of ladders, ropes, or scaffolds. The assessment also reported that the claimant should avoid all exposure to hazards. (Exhibit 9F). As this assessment is consistent with the other evidence of record, including the consultative examination, it is accorded great weight.

[R. 15.]

The ALJ also noted that Plaintiff had a history of non-compliance with her medication, [R. 13], and that she seemed to exaggerate some symptoms [R. 14].

For example, the claimant reported vision and speech difficulties since her onset of multiple sclerosis. However, these allegations are not supported by the evidence of record. Specifically, the consultative examiner noted that the claimant's vision was within normal limits. (Exhibit 7F). Additionally, the claimant's speech was not noted to noticeably impair communication with examiners or providers. Furthermore, in April 2010, following an acute exacerbation, physical therapy notes reported that the claimant's word, phrase, sentence, and conversational speech were judged as 100% intelligible. The therapist concluded that the claimant's cognition, language, and swallowing were all within functional limits. (Exhibit 10F).

The claimant also testified to an ongoing general weakness on the right side of her body, such that she was unable to lift a gallon of milk, or perform household chores. Yet, treatment notes reflect that even before the claimant became compliant with her medication, she had only "residual mild right-sided weakness", and her decreased strength was "very subtle." (Exhibit l0F). Moreover, although the claimant testified that she experienced side effects, including fatigue, from her medication, the record fails to reflect this was reported to her treating physician. In fact, in August 2010, the record indicates that the claimant had no reported side effects, aside from local bruising at the medication injection site. (Exhibit 10F). In addition, the claimant testified that her pain intensity was a ten out often on the pain scale, and only decreased to an eight with the use of pain medication. However, the record fails to reflect the claimant ever reported this severity of pain to her treating or examining physicians.  In fact, in April 2010, physical therapy

notes reflect that the claimant reported initially reported no pain and later had only minimal pain (2/10). (Exhibit 10F). Moreover, treatment notes failed to reflect the claimant was prescribed any narcotic pain medication. (Exhibit 10F).

The undersigned notes that the claimant testified that she spent the majority of her day sitting, but did not use assistive devices for ambulation. She also reported that she was able to prepare simple microwavable meals, read, watch television, and attend to her personal needs. Even prior to the claimant's medication compliance, in April 2010, she reported that she had "good days and bad days" and sometimes she was able to perform activities of daily living without assistance. (Exhibit 10F).

Additionally, the undersigned has considered the testimony of the claimant's sister, with regard to the observations of claimant's decline in health. However, the undersigned notes that the level of severity described is inconsistent with the medical evidence of record. Furthermore, the undersigned notes that this individual may be motivated by empathy for the claimant's situation. Therefore, these statements are not found fully credible.

[R. 14.]

Upon reviewing the ALJ's decision, the Court does not find that the ALJ conducted an improper credibility analysis, or that his decision otherwise reflects a failure to properly consider all the evidence in this case. To the contrary, the ALJ sufficiently explained his reasoning for discounting Plaintiff's claim of severe limitations in her activities of daily living. The ALJ expressly evaluated Plaintiff's pain complaints in accordance with the two-step process outlined in *Craig v. Chater*; and, likewise, the ALJ considered the relevant factors for evaluating the same as outlined in 20 C.F.R. § 404.1529(c)(3). Specifically, the ALJ discussed Plaintiff's allegations of right-sided tingling, headaches, and blurred vision and found that the claimant's symptoms significantly improved with intravenous medication, and that physical and neurological examinations were generally normal, including gait, station, and running. The ALJ also explained his treatment of the May 2010 consultative exam noting that, while the examiner reported the Plaintiff exhibited an unsteady gait, the

33

examination itself was generally normal and revealed normal tone, bulk, and strength, and the neurological examination was also within normal limits.  Additionally, the ALJ reasoned that while Dr. Maru opined that Plaintiff was unable to work, the ALJ found this opinion was inconsistent with Dr. Maru's treatment notes which reported that, after beginning her medication in April 2010, the Plaintiff was doing well and reported her headaches had resolved and her left hand paraesthesias were improved.

The ALJ considered the testimony of the Plaintiff's sister regarding her observations of Plaintiff's decline in health, but the level of severity described was inconsistent with the medical evidence of record.   Furthermore, while Plaintiff testified that her pain intensity was a ten out of ten on the pain scale, and only decreased to an eight with the use of pain medication, the ALJ noted that the record fails to reflect that Plaintiff ever reported this severity of pain to her treating or examining physicians and, in April 2010, initially reported no pain and later had only minimal pain (2/10).  The ALJ also noted Plaintiff was able to perform activities of daily living with no assistance.

Plaintiff takes issue with the ALJ's finding that she was non-compliant with medical treatment for a period of time without addressing her inability to pay.  However, the Court finds that the ALJ provided numerous other reasons for discounting the impact of Plaintiff's alleged impairments on her ability to work outside of her alleged non-compliance with medical treatment.  Thus, any error on the part of the ALJ in failing to weigh Plaintiff's non-compliance in light of her ability to pay is harmless error.  *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (applying harmless error standard to ALJ's credibility analysis where ALJ would have reached same result notwithstanding initial error).

34

In summary, the ALJ's decision reflects that he considered the full range of evidence alongside evidence of Plaintiff's testimony, complaints to providers, daily activities, and efficacy of her medication to make his conclusion about the severity of Plaintiff's condition and its impact on her ability to work.  Thus, the Court can not find that the ALJ's credibility analysis is unsupported by substantial evidence.

**Weighing of Treating Physician Opinions**

Plaintiff contends the ALJ applied an incorrect legal standard in weighing the records and opinion of treating physician Dr. Neal Maru, thus, requiring remand as determined by this Court to be appropriate in *Boineau v. Astrue,*[13] 378 F. Supp.2d 690

---

[13]The Court presumes Plaintiff is referring to the case of *Boineau v. Barnhart,* 378 F.Supp.2d 690 (D.S.C. 2005).  In *Boineau*, the magistrate judge recommended the case be remanded because the ALJ's weighing of the treating physician's opinion was not supported by substantial evidence.  *Id.* at 695.  Specifically, the treating physician conducted a physical capacities evaluation of Boineau and concluded that Boineau

> could lift or carry "5 lbs. Occasionally to 1 lbs. [sic] frequently," could work three hours a day sitting and one hour a day standing or walking, and would likely miss four days of work each month. (R. at 238.) To support these conclusions, Dr. Niemer did not provide his medical basis on the physical capacities evaluation form. ( Id.) However, when he gave his evaluation, he had been treating Boineau since early March, and his records substantiate Boineau's consistent pain resulting from her fibromyalgia.

*Id.* In this case, the ALJ concluded that the treating physician's opinion was not entitled to controlling weight because it was undermined by Dr. Neimer's own treatment records.  Id. at 693.  In discounting the treating physician's opinion, the ALJ pointed to references in the doctor's treatment notes indication the Plaintiff "reported fair energy, better sleep, increased exercise, improved fatigue, and feeling comfortable." Id.  Upon review, however, the magistrate judge pointed out that the treatment notes also indicated that Plaintiff

> experienced pain in her hips, stiffness in the morning, and tenderness in eighteen of eighteen tender points. (Id.) Finally, on October 17, Dr. Niemer wrote that Boineau suffered from "low[er] back cramping," poor energy levels, and tenderness in fourteen of eighteen tender points, and that he gave Boineau an injection of medication

> Although Dr. Niemer noted that Boineau "appeared comfortable" during all three visits, Dr. Niemer also found that she had sixteen, eighteen, and fourteen tender points at the three visits, respectively. Further, Dr. Niemer noted a.m. stiffness and pain and/or cramping at each visit. (R. at 239–40, 243.) Hence, while Boineau fluctuated with respect to variables such as energy level and sleep, Dr. Niemer consistently recorded pain and at least fourteen tender points on each visit.

*Id* at 695.

(D.S.C. 2005). [Doc. 17 at 14.] Plaintiff contends that "like in *Boinuea* [sp], [Plaintiff's] case should be reversed under *Mastro* because the ALJ improperly evaluated opinion evidence by affording her treating Neurologist's opinion little weight without adequate explanation." [*Id*. at 15.]

Under some circumstances, the opinions of the treating physicians are to be accorded controlling weight. Even where the opinions of the treating physicians of the claimant are not accorded controlling weight, the Commissioner is obligated to weigh those opinions "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir.2005) (citing 20 C.F.R. §§ 404.1527(c)(1)-(5)). Under these standards, the opinions offered by a long-treating neurologist, such as Dr. Maru, should generally receive the highest level of deference and weight and the opinions of non-treating and non-examining chart reviewers should generally receive the least amount of deference and weight.

In the face of "persuasive contrary evidence," however, the ALJ has the discretion to accord less than controlling weight to such an opinion. *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir.2001). Further, "'if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly

---

Upon review by the district judge, the Court found that the ALJ ignored evidence that was consistent with the treating physician's opinion and relied on the opinions of the state agency examiners who failed to provide specific reasons for their contrary opinions about the Plaintiff's residual functional capacity and thus remanded the case. *Id*.

less weight.' " *Id.* (quoting *Craig*, 76 F.3d at 590). In any instance, SSR 96-2p requires that an ALJ's decision "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96–2p, 1996 WL 374188, at *5., 61 Fed.Reg. 34490, 34492 (July 2, 1996).

Moreover, statements that a patient is "disabled," "unable to work," meets a Listing's criteria, or similar statements are not medical opinions; these are opinions on issues reserved to the Commissioner. 20 C.F.R. § 404.1527(e). Opinions on issues reserved to the Commissioner must not be disregarded even when offered by a treating source; they, however, can never be entitled to controlling weight or given special significance. SSR 96–5p, 1996 WL 374183, at *5 (July 2, 1996); see also 20 C.F.R. §§ 404.1527(e), 416.927(e) (stating an ALJ does not have to "give any special significance to the source of an opinion on issues reserved to the Commissioner," such as an opinion that the claimant is disabled, the claimant's impairment or impairments meets or equals a listing, or the claimant has a certain residual functional capacity).

### Treatment of Dr. Maru's opinion

In October 2010, Dr. Maru, a neurology resident at MUSC [R. 379], wrote a letter on Plaintiff's behalf to the Betaseron Assistance Program seeking a waiver of her co-pay for a drug due to financial constraints. [R. 388.] In this letter, Dr. Maru indicated that Plaintiff was "currently unable to work due to her medical condition." [*Id*.] Upon considering Dr. Maru's opinion, the ALJ noted that such a determination regarding disability was an issue reserved to the Commissioner and that the record failed to reflect any specific

limitations placed on Plaintiff. [R. 15.]  Additionally, the ALJ noted that Dr. Maru's treatment notes from August 2010 indicated Plaintiff was doing well and that her left hand paraesthesias was improved. [*Id.*] Accordingly, the ALJ accorded this opinion little weight. [*Id.*]

In his decision, the ALJ expressly considered and weighed the opinions of two state agency medical examiners,[14] giving the opinion of Dr. John Gastright considerable weight and the opinion of Dr. Jim Liao great weight. [R. 15.] Dr. Gastright conducted a disability evaluation of Plaintiff on May 11, 2010. [R. 350.] Upon examination, Dr. Gastright found Plaintiff was in no acute distress and had generally normal findings with the exception of her gait, which Dr. Gastright found to be unsteady although her thoracic spine was stable with normal range of motion; her lumbar spine revealed normal lordosis with normal range of motion; and her upper and lower extremities were normal upon inspection with normal tone, bulk and strength. [R. 351-52.] Dr. Gastright concluded that Plaintiff would have a difficult time in a position that required prolonged standing or stair climbing. [R. 352.]

Dr. Liao completed an RFC assessment on May 18, 2010, based on Plaintiffs then current medical status and found Plaintiff could occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk at least 2 hours in an 8-hour day; sit about 6 hours in an 8-hour day; push and/or pull an unlimited amount; stoop, kneel,

---

[14] "State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." SSR 96–6p. *See also, Smith v. Schweiker*, 795 F.2d 343, 345–46 (4th Cir.1986) (stating that the opinion of a non-examining physician can constitute substantial evidence to support the decision of the Commissioner); *Stanley v. Barnhart*, 116 Fed. Appx. 427, 429 (4th Cir.2004) (unpublished) (disagreeing with the argument that the ALJ improperly gave more weight to residual functioning capacity assessments of non-examining state agency physicians over those of examining physicians and finding that the ALJ properly considered evidence provided by those physicians in context of other medical and vocational evidence). Furthermore, the regulations require the ALJ to evaluate these opinions in making his decision. *See* 20 C.F.R. 404.1527(e)(2) (i), 416.927(e)(2)(i).

crouch and crawl frequently; climb and balance occasionally; and never climb a ladder, rope or scaffold. [R. 355-56.] Dr. Liao also opined that Plaintiff's vision[15] was normal and that her speech did not noticeably impair her communication with him. [R. 355.] Dr. Liao noted no manipulative, visual, communicative or environmental limitations, other than Plaintiff should avoid exposure to hazards such as machinery and heights. [R. 358.] Dr. Liao opined that Plaintiff can reasonably be expected to be able to perform sedentary work with her primary limiting factor being her balance issues. [R. 359.] Dr. Liao opined that Plaintiff would have a difficult time in a position that required prolonged standing or stair climbing. [R. 360.]

**Analysis**

Plaintiff's argument that Dr. Maru's opinion was entitled to controlling weight in light of *Boineau* is without merit. Unlike in *Boineau*, the opinions of the state agency examiners in this case do not contradict the findings of Dr. Maru who failed to suggest any limitations on Plaintiff's ability to work. Dr. Maru only opines that *at that current time* Plaintiff was unable to work and is in need of medication which she can not afford. This statement by Dr. Maru does not definitively state that Plaintiff is unable to work indefinitely, but suggests that there may be a time when Plaintiff is able to work.

With respect to the agency medical opinions, the ALJ is entitled to rely on the opinion of a non-examining physician when the opinion is consistent with the record, and when medical expert testimony conflicts, the ALJ's decision siding with the non-examining physician should stand. *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir.1984). The

---

[15]On May 11, 2010, Dr. Liao noted Plaintiff's vision to be 20/50 OD, 20/30 OS and 20/40 OU. [R. 357.]

Fourth Circuit has also said that "a non-examining physician can be relied upon when it is consistent with the record." *Id.* (*citing Kyle v. Cohen*, 449 F.2d 489, 492 (4th Cir.1971)). *See also*, SSR 96–6p (stating that "[s]tate agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act"); *Smith v. Schweiker*, 795 F.2d 343, 345–46 (4th Cir.1986) (stating that the opinion of a non-examining physician can constitute substantial evidence to support the decision of the Commissioner); SSR 96-2p (opinions from other acceptable medical sources may be entitled to great weight, and may even be entitled to more weight than a treating source's opinion in appropriate circumstances).

As stated above, in considering the opinions of the consultative examiners, the ALJ found these opinions were consistent with the evidence of record. [R. 15.] Accordingly, the ALJ adopted the limitations of the consultative examiners and, with deference to these examiners, also limited Plaintiff's standing and walking to two hours in a day, precluded her from climbing ladders, ropes, or scaffolds, only occasional climbing of stairs and ramps, occasional balancing and the avoidance of all hazards. The law clearly supports the use of state agency opinions in providing substantial evidence for the ALJ's decision. The Plaintiff has failed to direct the Court to any evidence which would require the Court to find the ALJ's decision is not supported by substantial evidence.

**Residual Functional Capacity Determination**

Plaintiff argues that, because the ALJ improperly discredited Plaintiff's testimony about the effects of her impairments and improperly evaluated opinion evidence, he could not have considered the combined effects of all of her impairments and all relevant

40

evidence when determining the RFC. [Doc. 17 at 16.] Specifically, the Plaintiff contends

the ALJ failed to take into consideration Plaintiff's struggles with "vision problems (TR 31),

medication side effects of fatigue and flu-like symptoms (TR 35), numbness and tingling

in her right side, pain and pressure in her lower back (TR 32), susceptibility to falls due to

her balance issues (TR 37), her decreased grip strength, regular need of assistance by

family members to complete basic tasks (TR 42), and inability to climb stairs (TR 42-43)."

[*Id.*]

The Administration has provided a definition of RFC and explained what a RFC

assessment accomplishes:

> RFC is what an individual can still do despite his or her
> limitations. RFC is an administrative assessment of the extent
> to which an individual's medically determinable impairment(s),
> including any related symptoms, such as pain, may cause
> physical or mental limitations or restrictions that may affect his
> or her capacity to do work-related physical and mental
> activities. Ordinarily, RFC is the individual's maximum
> remaining ability to do sustained work activities in an ordinary
> work setting on a regular and continuing basis, and the RFC
> assessment must include a discussion of the individual's
> abilities on that basis. A "regular and continuing basis" means
> 8 hours a day, for 5 days a week, or an equivalent work
> schedule. . . .

SSR 96-8p, 61 Fed. Reg. 34,474–01, at 34,475 (July 2, 1996) (internal citation and

footnotes omitted).   The RFC assessment must first identify the Plaintiff's functional

limitations or restrictions and assess his or her work-related abilities on a

function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20

C.F.R. 404.1545 and 416.945.  *See id.*  Only after this identification and assessment may

RFC be expressed in terms of the exertional levels of work: sedentary, light, medium,

heavy, and very heavy.  *Id.*

41

In assessing RFC, the ALJ must consider limitations and restrictions imposed by all of a claimant's impairments, including those that are not severe. *Id.* at 34,477. While a non-severe impairment standing alone may not significantly limit a claimant's ability to do basic work activities, it may be crucial to the outcome of a claim when considered in combination with limitations or restrictions due to other impairments. *Id.* If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

Additionally, the Administration has determined that in assessing RFC, the ALJ

> must consider only limitations and restrictions attributable to medically determinable impairments. It is incorrect to find that [a claimant] has limitations or restrictions beyond those caused by his or her medical impairment(s) including any related symptoms, such as pain, due to factors such as age or height, or whether the [claimant] had ever engaged in certain activities in his or her past relevant work (e.g., lifting heavy weights.) Age and body habitus (i.e., natural body build, physique, constitution, size, and weight, insofar as they are unrelated to the [claimant]'s medically determinable impairment(s) and related symptoms) are not factors in assessing RFC . . . .

SSR 96-8p, 61 Fed. Reg. at 34,476. To assess a claimant's RFC, the ALJ must consider all relevant evidence in the record, including medical history, medical signs, laboratory findings, lay evidence, and medical source statements. *Id.* at 34,477. SSR 96-8p specifically states, "[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Id.* at 34,478.

The ALJ must also consider the degree to which any non-exertional limitations may further erode Plaintiff's ability to work. The Administration addressed the role of nonexertional limitations in an RFC assessment as follows:

> Nonexertional capacity considers all work-related limitations and restrictions that do not depend on [a claimant]'s physical strength; i.e., all physical limitations and restrictions that are not reflected in the seven strength demands, and mental limitations and restrictions. It assesses [a claimant]'s abilities to perform physical activities such as postural (e.g., stooping, climbing), manipulative (e.g., reaching, handling), visual (seeing), communicative (hearing, speaking), and mental (e.g., understanding and remembering instructions and responding appropriately to supervision). In addition to these activities, it also considers the ability to tolerate various environmental factors (e.g., tolerance of temperature extremes).
>
> As with exertional capacity, nonexertional capacity must be expressed in terms of work-related functions.... Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting.

SSR 96–8p, 61 Fed.Reg. at 34,476.

### ALJ's RFC Assessment

As stated above, the Court has found that the ALJ's credibility determination and consideration of the opinion evidence is supported by substantial evidence. To the extent Plaintiff is arguing that Plaintiff's alleged "symptoms" were not considered in combination, the ALJ's decision shows that he expressly considered Plaintiff's multiple sclerosis and obesity in combination [R. 12 ] and, further found Plaintiff's vision to be within normal limits [R. 14]; found no report of side effects, including fatigue, from her medication to her treating physician [*id*.]; and, found Plaintiff would have a difficult time standing for prolonged periods of time or climbing stairs [R. 15]. The Plaintiff failed to direct the Court to any reference in Plaintiff's medical records about complaints of numbness in her feet

and/or low back pain, and also failed to explain how these additional symptoms would change the RFC.  Accordingly, the Court can not find that the ALJ's RFC is not supported by substantial evidence.

**Vocational Expert**

Plaintiff argues the vocational expert's testimony is flawed because it is based on an incomplete recitation of impairments.  Again, the Court finds Plaintiff's argument to be without merit as the ALJ properly determined Plaintiff's credibility and properly analyzed the opinion evidence of record.

"In questioning a vocational expert in a social security disability insurance hearing, the ALJ must propound hypothetical questions to the expert that are based upon a consideration of all relevant evidence of record of the claimant's impairment." *English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir.1993) (citation omitted).  There is, however, no requirement that a hypothetical question contain a function-by-function assessment as required when formulating an RFC.  Rather, the hypothetical only needs to include all of the claimant's credible impairments. *See Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir.2005) (*citing Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir.1989) (noting that a vocational expert's opinion can only be helpful if it is "in response to proper hypothetical questions which fairly set out all of claimant's impairments") (emphasis added)).  Accordingly, if the record does not support the existence of a limitation, the ALJ need not include it in the hypothetical question.  *See Rutherford v. Barnhart*, 399 F.3d 546, 554 (3rd Cir.2005) (noting that "the ALJ must accurately convey to the vocational expert all of a claimant's

credibly established limitations" ) (emphasis in original). The ALJ posed the following hypothetical to the vocational expert:

> Q.  Okay. I'd like to ask you to assume someone who can perform light work except the individual can stand and walk two hours a day. Can never climb ladders, ropes, or scaffolds. Can occasionally climb ramps and stairs and occasionally balance. And must avoid all exposure to hazards. Could that individual perform any of the claimant's past relevant work?
>
> A.  She could do the past relevant work as a cashier.
>
> Q.  Okay.
>
> A.  And as a hair dresser.
>
> Q.  And that's limiting her to standing and walk [sic] two hours out of an eight-hour day?
>
> A.  Oh, then that would eliminate both of them. I'm sorry.
>
> Q.  Okay. All right. Assuming the same age, education, and work experience as the claimant. And let me repeat the RFC. The individual would be limited to light work except that person can stand and walk only two-hours out of an eight-hour day. Can never climb ladders, ropes, or scaffolds. Can occasionally climb ramps and stairs. Can occasionally balance. And must avoid all exposure to hazards. Are there any Jobs that such a person could perform in the regional or national economy?
>
> A.  In my opinion, there are no job in the national economy.
>
> Q.  No Jobs?
>
> A.  None.
>
> Q.  And can you tell me what In that in that residual functional capacity would preclude sedentary work?
>
> A.  I would not eliminate sedentary work, but would eliminate the light work with the standing for two hours.
>
> Q.  Okay. And there are no -- then your testimony is there are no light Jobs?
>
> A  That's correct. There are sedentary job[s].

45

The court finds this hypothetical question included all of Plaintiff's credible limitations and allowed the vocational expert to provide a helpful opinion as to whether or not occupations existed in the national and local economies that Plaintiff could perform. Accordingly, the Court finds the ALJ was entitled to rely on this testimony.[16]

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

January 31, 2014
Greenville, South Carolina

---

[16]The Court notes that the ALJ's RFC may contain a typographic error. The RFC states the Plaintiff can perform "light work" while the vocational expert and state consultative examiners found Plaintiff could perform "sedentary work". In any instance, the error is harmless because the ultimate conclusion remains the same: there is sedentary work in the national economy that can be performed by Plaintiff. *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir.1994) (finding the ALJ's error harmless when ALJ would have reached the same result notwithstanding an initial error in his analysis).